## Case No. 5,595.

### GOODYEAR DENTAL VULCANITE CO. v. PRETERRE.

[Cited in Celluloid Manuf'g Co. v. Goodyear Dental Vulcanite Co., Case No. 2,543. Nowhere reported; opinion not now accessible.]

[See Case No. 5,596.]

---

## Case No. 5,596.

### GOODYEAR DENTAL VULCANITE CO et al. v. PRETERRE.

[15 Blatchf. 274; 3 Ban. & A. 471; 14 O. G. 346.][1]

Circuit Court, S. D. New York.  Sept. 19, 1878.

PATENTS—IMPROVEMENT IN ARTIFICIAL GUMS AND PALATES—INFRINGEMENT.

1. The reissued letters patent granted to the Goodyear Dental Vulcanite Company, March 21st, 1865, originally issued to John A. Cummings, June 7th, 1864, for an "improvement in artificial gums and palates," the validity of which was settled in Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, are infringed when parts of hard rubber plates of teeth are replaced by new parts, made of the materials and according to the mode described in the patent.

[Cited in Banker v. Bostwick, 3 Fed. 518.]

2. The patent is also infringed, when the hard rubber plate formed and holding teeth in the manner prescribed in the patent is made, although it is mounted on a gold plate, which goes between it and the mouth, so that it does not touch the surface of the mouth.

3. The use of celluloid and rose pearl, in making plates in the manner described in the patent instead of hard rubber, *held* to be an infringement, although, in a prior case, in another circuit, such use was held to be not an infringement, but on different evidence.

[See Case No. 5,589.]

[This was a bill in equity by the Goodyear Dental Vulcanite Company against Adolph P. Preterre, for the alleged infringement of a patent.]

Edward N. Dickerson and Benjamin F. Lee, for plaintiffs.

Henry Baldwin, for defendant.

WHEELER, District Judge. This bill is brought for relief against alleged infringements of reissued patent No. 1,904, granted March 21st, 1865, to the Goodyear Dental Vulcanite Company, originally issued to one John A. Cummings, June 7th, 1864 [No. 43,-009], and now owned by the orators, for an "improvement in artificial gums and palates." The cause has been heard upon the bill, answer, replication, proofs, and argument of counsel. The validity of the patent has been settled, as against another party in Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, and, on this argument, it is not denied by the defendant's counsel but that it is valid here. It appears that the defendant operated under a license from the patentees up to January 1st, 1871. The only questions made are as to whether he is shown to have infringed since that date. It is claimed by the orators that he is shown to have done so, by making hard rubber plates of teeth, of the materials and according to the mode described in the patent; by replacing parts of such plates of teeth in like manner; by making such plates mounted upon gold plate; and by making plates according to that mode, of celluloid and rose pearl. The defendant denies making any new sets of hard rubber and claims that the other matters charged are not infringements.

I. Upon the evidence, it sufficiently appears that he has made a few plates of hard rubber within the time in dispute, but not many; perhaps, four, five, or six. The exact number must be settled by the master. All the testimony may be true, if he has; if he has not, some of it must be corruptly false. His conduct about directing the employees to call the material composition, when it is not known by that name, and in not appearing to testify himself in explanation, is more consistent with a use by him of the material known to be unlawful than the contrary. On the whole, this finding, after placing the burden of the proof of infringement upon the orators, is the most satisfactory.

II. The patent seems to be for a plate or set of teeth, formed in a particularly specified mode, of material having certain qualities. The extent of the plate in the mouth of the wearer, either as to surface of the mouth covered, or the number of teeth in the plate, is not made important. It covers one tooth with plate sufficient for it, or more teeth with plate enough for them, according to the requirements of each particular case. It is for so much plate as is needed to hold as many teeth as are wanted. If any plate, formed and holding any teeth according to the patent, is made, the patent is infringed. The defendant's witness Fisk describes the mode of making the repairs complained of. By his description, which is not disputed or varied, it appears that a part of the plate to be repaired is cut away and replaced by new, holding teeth imbedded in it, made exactly as the patented plate is. So much of the plate as is formed in that way is an infringement. It is said that the presumption is that the wearer of the plate has a right to have it repaired, and that it is no infringement to repair it. But, whether that is so or not, this replacing is not strictly a repair, like replacing a part of a machine, expected to be worn out and intended to be replaced, in the same machine. It is a new manufacture of itself, of the kind patented, embracing in itself all parts of the patented combination. The part added includes the patented product as much as if it were used alone to the same extent, and as much as the part added to would, if unauthorized. It would

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, reprinted in 3 Ban. & A. 471, and here republished by permission.]

be as correct to say that a new plate is made out of the old and new materials, as to say that the old plate is repaired with the new materials. More new may be added than remains of the old, or less. The proportion is not important. To the extent of the new, when new plate holding teeth is made, it is new manufacture, covered by the patent, and an infringement.

III. The object of the invention seems to be to fit and attach artificial teeth to the mouth. The defendant's gold plate, mounted with the rubber one holding teeth, is for the same purpose. It appears from the unqualified testimony of the defendant's witness Fisk, as well as from the appearance of the exhibit, that, so far as the rubber plate and the teeth are concerned, it is made precisely as rubber plates not to be so used in mounting gold plates are, that is, exactly according to the patent, except that the rubber may not be made to extend so far into the mouth as it would be if there was to be no gold plate. But, as before mentioned, the extent of the plate is not material to the patent. It is the plate formed and holding teeth in the prescribed manner that is its distinctive feature, extending so far as necessary in each particular case. With the gold plate is the same rubber plate, formed and holding teeth in the same prescribed manner, extending so far as is necessary under those circumstances. The rubber plate is used to attach the teeth to the mouth and hold them in place, by being attached to the gold plate which goes between it and the mouth, instead of touching the surface of the mouth itself. It attaches the teeth to the mouth in the same manner, although not so directly, as without the gold. The patented product is used for the purposes of the patent, so far as it is used at all. In that use the defendant employs the whole of the patented invention, by taking it to add his gold plate to. He may have improved it, or may not, by that addition. But, whether he has or not, when he so uses it he infringes the orators' rights.

IV. The defendant is shown to use celluloid and rose pearl in the manner described by the witnesses, in making dental plates. He relies largely upon the decision in Goodyear Dental Vulcanite Co. v. Davis [Case No. 5,589], by the late learned Circuit Judge Shepley, in the district of Massachusetts, in support of the position, that the use shown in this case is not an infringement. If that case was exactly like this it should and would have great and controlling weight in the decision of this, both on account of the eminent learning and ability of the court making the decision, and because the same rule ought to prevail throughout the country, in respect to infringement of the same patent by the same means, as well as upon other questions in respect to other subjects, as was so well expressed by the late learned Circuit Judge Emmons, in Goodyear Dental Vulcanite Co. v. Willis [Id.

5,603]. But, this case, upon the evidence here, is not like that before Judge Shepley, as the facts are stated in his opinion to have appeared there. The patent may well be considered to be established as valid everywhere, but, whether parties have infringed it in particular cases must depend upon the proof in each case. The owners of the patent may be able to prove infringement in one case and not in others; but, proving it infringed in one case will not show that all others charged to be infringers are so, nor will failure show that none others charged are so. It is only when the facts of the cases are alike, that one ought to control another.

In that case, the question was, whether the patent for a plate of teeth made of rubber compounded with sulphur, and subjected to heat to harden it, would be infringed by plates of teeth made of celluloid, shown to be "a new material discovered and patented since the date of Cummings' invention," in the manipulation of which, "the process of making a set of teeth composed of the plate, and teeth, and gums, is an entirely different process from that described in the Cummings patent, when compared with that part of the Cummings process which was new in the state of the art, and the novelty of which part gave to the Cummings process, when considered as a whole, the ingredient of novelty and patentability;" when it was "not placed in the mould in a soft, plastic condition, 'a little at a time pressed in with the finger, or in any other convenient way,' but in a hard, rigid condition, like horn, or bone, or ivory," and "then subjected to heat, not to vulcanize or harden, but to soften it;" and which, "afterwards, on being cooled or restored to its original temperature, returns to its original condition as a hard substance, as when first placed in the mould;" from which it appeared "evident to the court that the use of" the celluloid, in the manufacture of sets of artificial teeth, as practised by those defendants, and the manufacture itself, differed "as much, both as to process and product, from the process and product described and claimed in the Cummings patent, as that process and that product differed from the previous manufactures which existed before the Cummings invention, and were unsuccessfully relied upon as anticipating it."

In this case, it appears, from the evidence, that the celluloid and rose pearl in use by the defendant, whether actually the same as that material in that case or not, were well known at the date of that invention; and, from the testimony of the defendant's witness Fisk, that, in use, it is softened in boiling water, and made plastic before it is put into the moulds; and, from defendant's witness Parmelee, that vulcanized rubber is soft when hot, and becomes hard by cooling; and also, from the witness Fisk, that the means employed for fastening the teeth to the plate are the same in respect to each substance, and

that, when the celluloid plate is completed, "its structure is precisely the same as that of a vulcanite dental plate, except that the base of one is made of celluloid, and the other of vulcanite," and that they are so much alike that any one might mistake one for the other, and patients seldom notice the difference.

It is obvious, from this statement, that this case, upon its facts, is radically different from that, and should not be controlled by the decision there, further than the same principles are applicable to both. That decision does not seem to proceed exactly upon the ground that there could be no equivalent for vulcanite, but rather upon the ground that what was claimed to be an equivalent was not in fact so.

The invention seems to be, of a combination, in a dental plate, of the plate proper, holding the teeth imbedded into it, and made fast in the mode described, with the teeth themselves. The material of the plate is of chemical formation, but the operation of the plate, when formed, is mechanical. The teeth are the main object. The plate is for the purpose of holding them in the right position in respect to the mouth. It is held in place itself principally by atmospheric pressure, and holds the teeth in place by its mechanical strength. The rubber plate is very useful for this purpose, on account of its lightness, slightly yielding rigidity, and capability of the material for being fitted into the mould when soft, and becoming hard in exactly the shape of the mouth, without shrinking. The celluloid shown here appears to have the same qualities and capability in these respects. The mode of taking the impression of the mouth, and making moulds for the plate and teeth, of plaster, by using wax, was old. Rubber, the mode of vulcanizing it, and vulcanite itself, were old. Moulding vulcanite into shapes wanted was old. Cummings invented combining it, when hot and plastic, with artificial teeth, by moulding it about them in their proper position, so that the whole would be in the required shape and relative position, in one solid piece, when the rubber should become hard, Celluloid was old. The defendant, with moulds made by the same method as Cummings', combines that with artificial teeth, by moulding it about them, when hot and plastic, so that the whole will be in one piece, in the required shape, with the teeth in their proper position, when it becomes hard; and, when the products of these processes are done, they are so near alike, that persons using them do not distinguish one from the other. The celluloid is, for this purpose, clearly the mechanical equivalent of the vulcanite. Chemically, they are, in some respects, different, but, in all that are of any importance, for the purposes they are here wanted for, they are the same. They burn differently, but they are not wanted for burning. They come to the plastic state, in which they can be put into the moulds, by chemical and widely different processes. The process by which they are converted, from masses in that state, into finished dental plates, so inheres in the product, that it is said to give distinctive character to it. That process begins with the moulding. The point is not, whether the substances were ever equivalents for these, or any other, purposes before, but whether they are equivalents for this purpose then, and it seems that they are.

It is said, by Mr. Justice Clifford, in Gould v. Rees, 15 Wall. [82 U. S.] 187, 194, and in Gill v. Wells, 22 Wall. [89 U. S.] 1, that inventors of a combination are as much entitled to equivalents as the inventors of other patentable improvements, if the equivalents were known to be such at the date of the patent. Judge Shepley, in Goodyear Dental Vulcanite Co. v. Davis, before mentioned, either intentionally or inadvertently, said, in respect to the same thing, "the date of the invention." Some question has been made about which date controls, if either does absolutely. Perhaps it is the date of the patent, because the patent is a grant, and, as such, must speak from its date. But, whichever date should control, or whether either should, is not material in this case, for the evidence is full that celluloid and rose pearl, with their moulding and other qualities useful to this manufacture, were well known at both dates.

Under the reasoning of the court in Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, in which the validity of the patent was held, if Hawes, there mentioned, had been shown to have used celluloid or rose pearl, as the defendant now uses them, instead of tin, as he was shown to have used that, in making dental plates, the patent could not have been maintained. He would have been entitled to the patent instead of Cummings. Celluloid itself may be patentable and patented, but the use of it in this manner, in the formation of dental plates, could not be, in the light of Cummings' invention; and, whether the invention of this use of them would be patentable, in the view of the other patent, is one accurate test of whether it is an infringement of that patent. Curt. Pat. §§ 321–323; Walton v. Potter, 4 Scott, N. R. 91.

Let a decree be entered for an injunction and an account in respect to these infringements, with costs, according to the prayer of the bill.

[For other cases involving this patent, see note to Dental Vulcanite Co. v. Wetherbee, Case No. 3,810.]